Birchard, C. J.
The testimony presented in these cases shows that these three defendants are entitled to hold their several professorships, unless the convulsion, which in 1838 separated the Presbyterian Church into two great divisions, has disqualified them. Which of those two bodies now constitutes the true general assembly of the Presbyterian Church in the United States, within the meaning of the act incorporating the Lane Seminary, is a question that we can not be required to determine in these proceedings. Eaeh'division claims to be the true genoi-al assembly, and, for purposes of distinction, one is called the Old School General Assembly, the other the New School General Assembly. It is one of those unfortunate schisms of a respectable body that is to be lamented, but probably not to be healed, or likely in any manner to be benefited by the intermeddling of rude hands. Wo do not, therefore, in the least regret to find these cases so presented that we can not, with propriety, be called upon to investigate the merits or demerits of either the exscinding or exscinded divisions of these respected and venerated bodies. The precepts of Him whom they both profess to worship, and “ who spoke as never man spake,” will be a sure guide to harmony and peace,-and it is to be hoped, that at no distant day, the influence of those precepts will restore unity and Christian fellowship between the churches of the two general assemblies, together with a spirit of fraternal harmony, so that being again united by a common faith and common rules of religious government, there may be no disposition or occasion to invoke the aid of the civil tribunals, in a controversy alien to the objects of all Christian association, and which should never have been permitted to disturb the prosperity or endanger the usefulness of the Presbyterian Churches of the United States
*304 These defendants have, since the unfortunate separation, caused by the exscinding resolutions of the general assembly, *adhered to that division of the church known as the New School Assembly. They are among its most -valued public teachers, both in precept and example; and if it be true that to thus belong to that body, disqualifies them for the professorships which they respectively fill, the cause of disqualification occurred more than three years prior to. the commencement of these proceedings. Hence, the question arises, admitting it to be a cause of ouster, can they be reached under our statute, and ousted by these j>roceedings ?
These suits were instituted under the act passed March 17,1838 (Swan’s Stat. 769), and fall within the first class of cases enumerated in section 1 of the act: “ The unlawfully holding and exercising of office in a corporation created by the authority of this state.”
The defense presented by the plea is made under the provision of section 26, page 775, of the statute, which reads thus :
“ Nothing in this act contained shall authorize any proceeding,” etc. “Nor shall any proceeding be commonced under this act, against any officer, to oust him or her from office, unless such proceeding shall be commenced within three years next after the cause of such ouster.”
This language seems to us sufficiently explicit, and to admit of very little doubt as to the intention of th.e general assembly in employing it. We can not hesitate in coming to the conclusion that the right to proceed by quo warranto, is denied after the lapse of three years from the time the right to prosecute first existed. Any other construction would practically annihilate this portion of the statute, and leave a large class of cases without any bar. There is, in our estimation, no propriety in considering each day’s continuance in office without the requisite qualification of a new cause of ouster. Such a refinement of construction can not be allowed, because its tendency is destructive to the letter and spirit of the law. It would extend the application of this remedy to all officers who originally entered upon office without authority, notwithstanding an incumbency of more *than twenty years. The legislature never intended that this process should be used for such a purpose. Their object was to secure peace after a certain period, and to allow no one to question a right, in this form, that he had acquiesced in for three years, and the exercise of which, for that *305 period, bad been so harmless as to give no occasion for complaint.
In Ohio v. Granville Alexandrian Society, 11 Ohio, 9, it was said that “ if the proceeding is against an officer, to oust him from office, it must be commenced within three years after the'cause-of such ouster shall have arisen.”
We can see very little of the analogy discovered by counsel between the action for false imprisonment, and this proceeding. It is true that a bar of the statute of limitations would not be good as to that portion of the imprisonment subsequent to the six years. The case cited from Angelí, to that effect, is undoubted law. The reason of that decision is, that each day’s continuance of the body of a person in custody, is a distinct trespass, and may be treated as such. The other cases cited in support of the relator’s views, seem to have still less application, and need not be further noticed..
But it has been said, “ It can not be that because a man has. been permitted to usurp an office for which he has not the qualifications required by the charter, he may continue to usurp indefinitely, because three years have elapsed since the first aggression.”
It is quite a sufficient answer, to state in reply, that this remedy in such a case is forbidden in decisive language. But it by no méans follows that because it is denied there is no remedy. If these defendants are usurpers, the trustees of Lane Seminary have ample power to make a new cause of ouster by removing them from their professorships, and electing others to fill their places.
It is the stranger only, whose hands are quieted by operation of the statute. Judgment for defendants.